[773 NYS2d 38]

RUTH WESTBROOK, Appellant, v WR ACTIVITIES-CABRERA MARKETS et al., Respondents.

First Department, March 9, 2004

**APPEARANCES OF COUNSEL**

*DiJoseph & Portegello, P.C.* and *Law Office of Avi D. Caspi, PLLC* (*Arnold E. DiJoseph III*, of counsel), for appellant.

*Downing & Peck, P.C. (Paul K. Ryan* of counsel), for respondents.

## OPINION OF THE COURT

SAXE, J.

This appeal gives us the opportunity to investigate and reexamine the proposition that a property owner will not be liable in tort under a theory of common-law negligence when a complained-of dangerous condition was open and obvious.

Plaintiff Ruth Westbrook states that on May 29, 1998, as a result of defendant's negligence, she tripped and fell over a cardboard box that had been left in an aisle at a Met Foods supermarket on White Plains Road in the Bronx. Her testimony at deposition described how she was at the checkout counter when the cashier informed her that Crisco oil was on sale. Plaintiff left her purchases at the checkout counter, and, carrying only her pocketbook, returned to the aisle where the oil was located. She walked about 8 to 10 steps, then turned left into the subject aisle. As she turned into the aisle, plaintiff fell forward across a box which was just off the corner, near the middle of the aisle, and landed on her knees and elbow and her wrist went back. The box had not been visible as plaintiff approached the aisle, and she did not see the box before she fell. The dimensions of the box were 2¹/₂ feet long by 1¹/₂ feet wide by 10 to 12 inches high. The box was unopened.

Plaintiff brought suit for negligence; defendants moved for summary judgment, arguing that the box over which plaintiff fell did not constitute a dangerous condition as a matter of law and did not give rise to a duty to warn as it was open, obvious and readily observable. The motion court granted defendants' motion, holding that the box left in the aisle of defendant's store was not inherently dangerous, and that it was readily observable by the use of plaintiff's senses as a matter of law.

We reverse, observing that it was error to conclude as a matter of law that a box a customer happened upon as she rounded a corner into an aisle was "open and obvious." Additionally, we hold that even if a hazard qualifies as "open and obvious" as a matter of law, that characteristic merely eliminates the property owner's duty to warn of the hazard, but does not eliminate the broader duty to maintain the premises in a reasonably safe condition.

*Discussion*

To be entitled to summary judgment, defendant, as a property owner, was required to establish that it maintained its supermarket in a reasonably safe manner, and that it did not create a dangerous condition which posed a foreseeable risk of injury to individuals expected to be present on the property (*see Monge v Home Depot*, 307 AD2d 501, 502 [2003]).

Here, defendant offered no evidence whatsoever on the question of whether it created the condition or maintained its supermarket in a reasonably safe condition. Instead, relying solely on plaintiff's deposition testimony, it argued that the alleged defect was not inherently dangerous and it had no duty to protect against or warn of the condition, in view of its "open and obvious" nature.

*1. Whether the Hazard is Open and Obvious as a Matter of Law*

If a hazard or dangerous condition is open and obvious, the owner of the property has no duty to *warn* a visitor of the danger (*see Tagle v Jakob*, 97 NY2d 165 [2001]). The theory underlying the "open and obvious" doctrine is this:

> "Where a danger is readily apparent as a matter of common sense, 'there should be no liability for failing to warn someone of a risk or hazard which he [or she] appreciated to the same extent as a warning would have provided.' Put differently, when a warning would have added nothing to the user's appreciation of the danger, no duty to warn exists as no benefit would be gained by requiring a warning." (*Liriano v Hobart Corp.*, 92 NY2d 232, 242 [1998], quoting Prosser and Keeton, Torts § 96, at 686 [5th ed].)

The hazard or dangerous condition must be of a nature that could not reasonably be overlooked by anyone in the area whose eyes were open (*see Tagle v Jakob*, 97 NY2d 165 [2001]), making a posted warning of the presence of the hazard superfluous (*Liriano, supra*).

Therefore, a plaintiff's theory of negligence based upon the claim that the property owner violated its duty to warn of the claimed hazard may be dismissed upon a demonstration that the hazard was open and obvious. Here, however, the nature of this alleged hazard simply does not compel the conclusion as a matter of law that the claimed hazard was so obvious that it would *necessarily* be noticed by any careful observer, so as to make any warning superfluous.

At the outset, the question of whether a condition is open and obvious is generally a jury question, and a court should only determine that a risk was open and obvious as a matter of law when the facts compel such a conclusion (*see Tagle v Jakob*, 97 NY2d 165, 169 [2001]). Nor is the mere fact that a defect or hazard is capable of being discerned by a careful observer the end of the analysis. The nature or location of some hazards, while they are technically visible, make them likely to be overlooked.

Illustrating the concept that even visible hazards do not necessarily qualify as open and obvious is *Thornhill v Toys "R" Us NYTEX* (183 AD2d 1071 [1992]), in which summary judgment was denied where a customer tripped and fell over a raised platform in a department store. The Court explained that an issue of fact was presented as to whether the platform was open and obvious, even though the platform was discernible, and indeed, the plaintiff had initially noticed and avoided it. The Court relied on photographs revealing that the presence of the platform was *not as clearly discernible* from the rear as it was from the front, due to the presence of circular display racks (*id.* at 1073).

Here, too, a question of fact is presented as to whether, under the circumstances, the hazard was open and obvious.

## 2. The Duty to Maintain Premises in Safe Condition Remains

Even if we agreed that the claimed hazard here was open and obvious as a matter of law, we would still deny summary judgment, since plaintiff is not claiming a violation of the duty to warn, but a violation of the broader duty to maintain the premises in a reasonably safe condition.

Until recently, some courts have dismissed all negligence claims where the hazard was considered to be open and obvious, broadly holding that " '[l]iability under . . . common-law negligence will not attach when the dangerous condition complained of was open and obvious' " (*see e.g. Sandler v Patel*, 288 AD2d 459, 459 [2d Dept 2001], *lv denied* 99 NY2d 509 [2003], quoting *Panetta v Paramount Communications*, 255 AD2d 568 [1998], *lv denied* 93 NY2d 806 [1999]; *Patrie v Gorton*, 267 AD2d 582 [3d Dept 1999], *lv denied* 94 NY2d 761 [2000]). However, the Second Department and Third Department have specifically repudiated their prior holdings such as in *Sandler v Patel* and *Patrie v Gorton*, holding instead that "proof that a dangerous condition is open and obvious does not preclude a finding of liability against a landowner for the failure

to maintain the property in a safe condition but is relevant to the issue of the plaintiff's comparative negligence" (*see Cupo v Karfunkel*, 1 AD3d 48, 52 [2d Dept 2003]; *see also MacDonald v City of Schenectady*, 308 AD2d 125 [3d Dept 2003]). Indeed, such a broad application of the open and obvious doctrine has recently been rejected in all four Departments; as this Court observed in *Cohen v Shopwell, Inc.*,

> "[T]he duty to maintain premises in a reasonably safe condition is analytically distinct from the duty to warn, and that liability may be premised on a breach of the duty to maintain reasonably safe conditions even where the obviousness of the risk negates any duty to warn." (*Cohen v Shopwell, Inc.*, 309 AD2d 560, 562 [2003], citing *MacDonald v City of Schenectady, supra*.)

These recent decisions are in accord with others coming to the conclusion that the open and obvious nature of a hazard merely negates the duty to *warn* of the hazard, not necessarily all duty to maintain premises in a reasonably safe condition (*see e.g. Orellana v Merola Assoc.*, 287 AD2d 412, 413 [1st Dept 2001]; *Holl v Holl*, 270 AD2d 864 [4th Dept 2000]).

As the Third Department observed in *MacDonald v City of Schenectady* (at 128-129), where the dismissal of the plaintiff's personal injury action was reversed despite her admitted prior awareness of the cracked condition of the sidewalk on which she tripped:

> "A contrary rule of law would permit a landowner to persistently ignore an extremely hazardous condition—regardless of how foreseeable it might be that injuries will result from such condition—simply by virtue of the fact that it is obvious and apparent to onlookers. In our view, the extent that a danger is obvious is a factor which, like the status of the plaintiff on the property, will impact the foreseeability of an accident and the comparative negligence of the injured party, but will not, as a matter of law, relieve a landowner of all duty to maintain his or her premises."

Yet, despite the foregoing decisions of *all* four Departments of the Appellate Division in recent months, concluding that the open and obvious nature of a defect does not abruptly end the analysis of a negligence claim against a property owner regarding an open and obvious hazard that can be remedied, our

concurring colleague suggests that we adopt the broad rule that was recently reconsidered and roundly rejected by the other Departments of the Appellate Divisions of this State: viz., that premises liability claims should be rejected as a matter of law when the dangerous condition is open and obvious. He believes that a landowner should have no legal duty to remedy an open and obvious hazard. This viewpoint stands in stark contrast to the basic concepts of premises liability: it would allow a landlord to leave unrepaired a dangerous defect, as long as it was obvious enough. We cannot accept this proposition. A landlord's duty to maintain premises in a reasonably safe condition under *Basso v Miller* (40 NY2d 233 [1976]) is not satisfied by permitting a highly dangerous—but correctible—condition to remain, simply because the dangerous condition is obvious.

Our colleague contends that an inordinate burden would be imposed upon property owners by our use of the standard *Basso* analysis, in which the jury considers whether the premises were reasonably safe and, if not, whether the accident was foreseeable and the condition a proximate cause of the injury. But, the spectre of "unlimited or insurer-like liability" and the "proliferation of claims of dubious merit" that he raises is overwrought and unwarranted. The property owner's duty is limited to maintaining premises in *reasonably safe* condition, a standard that by definition is not unreasonable.

This Court's decision in *Pinero v Rite Aid of N.Y.* (294 AD2d 251 [2002], *affd* 99 NY2d 541 [2002]), relied upon by our concurring colleague, is not to the contrary. There, the plaintiff, shopping in a supermarket, was well aware of the metal wagon filled with merchandise, which was blocking her access to the aisle. In an unforeseeable series of events, the employee who, at the plaintiff's request, was attempting to hand her some boxes of macaroni and cheese, lost his grip, and while the plaintiff tried to grab the falling boxes, her knee struck the wagon, causing it to move and her to fall. Importantly, on appeal the plaintiff abandoned her claim based upon the existence of an unsafe condition (*id.* at 253). Moreover, in remarking that "there is no duty to protect or warn against conditions that are in plain view, open, obvious, and readily observable by those 'employing the reasonable use of their senses' " (*id.* at 252 [citations omitted]), the *Pinero* court did not likewise preclude the duty to maintain premises in a safe condition by *eliminating* hazardous conditions or taking other steps to keep premises safe, other than warning of, or placing barriers against, a dangerous condi-

tion. While a duty to eliminate a hazardous condition would not in any event apply to a wagon of merchandise which an employee was at that moment in the process of placing on supermarket shelves, it could well apply to a lone carton left in a supermarket aisle. Therefore, the above-quoted remark in the *Pinero* case, upon which defendants rely, simply does not cover the type of hazard under consideration here. The open and obvious nature of a hazard may obviate a claim that the property owner violated the duty to warn of, or place barriers to protect against, dangers on the premises, but does not eliminate a claim that the presence of the hazardous condition constituted a violation of the property owner's duty to maintain the premises in a reasonably safe condition.

The allegations here support imposition of a duty on the property owner beyond that of merely warning of the presence of a tripping hazard in the aisle; they support the imposition of a common-law duty to take action to remedy the situation.

As to defendants' argument that the presence of the box in the aisle was not a dangerous condition, that contention is refuted by the testimony of the store's own manager, who testified that an unopened single box in an aisle constituted a "tripping hazard" because it was not readily visible to customers walking through the aisles. A lone 10-to-12-inch-high box in a supermarket aisle is, by definition, easily overlooked, creating a hazard which can, and ought to, be removed.

Finally, while defendant contends that plaintiff failed to establish that it had actual or constructive notice since the manager's testimony with respect to stocking procedures did not establish notice of this particular box, if defendant created the condition, the notice requirement was inapplicable (*see Cook v Rezende*, 32 NY2d 596 [1973]).

The burden on this summary judgment motion was on defendant to establish in the first instance that it did not create the condition or have notice of it (*see Giuffrida v Metro N. Commuter R.R. Co.*, 279 AD2d 403 [2001]). Here, the manager testified that despite the store policy and "hundreds" of warnings, single boxes had been left unattended in the middle of the aisle. This testimony, coupled with plaintiff's testimony that the box was unopened, was sufficient to raise a question of fact as to whether defendant created the hazardous condition.

Viewing the evidence in the light most favorable to plaintiff, there is a question of fact as to whether the condition was open and obvious, and readily discernible, since plaintiff's description

of the accident supports a possible finding that the box, though noticeable upon approaching it from the same aisle, was not noticeable to a customer entering the aisle. Moreover, there are issues of fact as to whether defendants violated the duty to maintain the premises in a safe condition. The motion court's grant of summary judgment on the ground that the box constituted an open and obvious danger as a matter of law must therefore be reversed.

Accordingly, the order of the Supreme Court, Bronx County (Bertram Katz, J.), entered April 25, 2003, which granted the motion for summary judgment by defendants WR Activities-Cabrera Markets and Met Foods, Inc., should be reversed, on the law, without costs, the motion denied and the complaint reinstated.

BUCKLEY, P.J. (concurring). I agree that there are issues of fact whether the cardboard box over which plaintiff tripped and fell constituted an open and obvious hazard. Among the evidence plaintiff presented in opposition to defendant's motion for summary judgment to dismiss the complaint was the deposition testimony of one of defendant's employees that:

> "You shouldn't have boxes no more stocked then five low so they are visible [sic]. All boxes should be stocked on one side . . . That's part of preventing an accident when you stock boxes high. Most people don't look down when they are walking."

Thus, there was a factual issue whether the single box, of modest size, and situated just off the corner, near the center of the aisle, was open and obvious to a customer rounding the corner of the aisle. That issue of fact requires reversal of the order appealed and reinstatement of the complaint. However, I disagree with the majority's ruling that the open and obvious doctrine negates only a duty to warn of conditions and permits recovery under a theory of a violation of a duty to maintain premises in reasonably safe condition. Such a rule effectively eliminates the open and obvious doctrine, invites potentially limitless actions of questionable societal value, and exposes landowners to insurer-like liability.

The starting point of the inquiry is the general principle that a landowner must maintain its property "in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk" (*Basso v Miller*, 40 NY2d 233, 241

[1976] [internal quotation marks omitted]). The "existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration," and depends on a balancing of such factors as "the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585, 586 [1994]). Moreover, "[j]udicial recognition of a duty of care must be based upon an assessment of its efficacy in promoting a social benefit as against its costs and burdens" (*Peralta v Henriquez*, 100 NY2d 139, 145 [2003]).

The open and obvious doctrine was developed in recognition of the principle that, where a condition is so readily observable through the use of one's ordinary senses and common sense that the landowner has no reason to expect that anyone will not observe it and take the appropriate measures to protect him or herself, the landowner has no duty to warn of the danger (*see Tagle v Jakob*, 97 NY2d 165, 170 [2001]). The obviousness of the danger itself serves as a warning, and any other notice by the landowner would add nothing.

The same reasoning applies to the landowner's general duty to maintain premises in a safe condition. By its very definition, an open and obvious condition is one which a landowner has "no reason to expect that [anyone] would not observe . . . or any conceivable risk associated with it" (*id.*). That is another way of stating that it is not foreseeable, within the meaning of tort law, that someone will be injured in connection with a patent hazard, and thus there is no basis for imposing liability on the landowner. Accordingly, the fact that a hazard is open and obvious cannot be just another factor in an analysis of foreseeability, as the Third Department has found (*see MacDonald v City of Schenectady*, 308 AD2d 125, 129 [2003]), and as the majority here now adopts. Again, a landowner has a duty only to maintain the premises in a "reasonably safe" condition (*see Basso*, 40 NY2d at 241), not to act as an absolute insurer against every possible harm, no matter how unforeseeable or unreasonable; the "duty of a landowner . . . is not limitless" (*Di Ponzio v Riordan*, 89 NY2d 578, 583 [1997]).

Indeed, this Court has previously held that "there is no duty to protect or warn against conditions that are in plain view,

open, obvious, and readily observable by those employing the reasonable use of their senses" (*Pinero v Rite Aid of N.Y.*, 294 AD2d 251, 252 [2002] [internal quotation marks and citations omitted]), which the Court of Appeals has affirmed (99 NY2d 541 [2002]). Thus, that is the rule in this state.

To find otherwise would also ignore the *Palka* factors of disproportionate risk and reparation allocation, the likelihood of unlimited or insurer-like liability, the proliferation of claims of dubious merit, and the reasonable expectations of the parties and society (*see Palka*, 83 NY2d at 586-587). A contrary rule would preclude landowners from availing themselves of the least expensive manner of preventing accidents, i.e., giving a warning, and impose upon them the cost of removing, altering or barricading conditions deemed to constitute a hazard, or else the financial burden of serving as the insurer of those who disregard patent dangers or fail to use their ordinary senses. Although the removal of a cardboard box, the hazard in the instant case, would have involved little cost to defendant, courts "must be mindful of the future effects their ruling will have" (*Peralta*, 100 NY2d at 144-145), and it is not difficult to imagine future instances in which the cost of abating an obvious condition would be disproportionate and even prohibitive.

ELLERIN and GONZALEZ, JJ., concur with SAXE, J.; BUCKLEY, P.J., and MARLOW, J., concur in a separate opinion by BUCKLEY, P.J.

Order, Supreme Court, Bronx County, entered April 25, 2003, reversed, on the law, without costs, defendants' motion for summary judgment denied and the complaint reinstated.